-Law Offices-

# STEVEN J. ABELSON

*The Woodhull House*

63 West Main Street
P.O. Box 7005
Freehold, New Jersey 07728580
(732) 462-4773

FAX: (732) 462-6673

sjaesq@sjabelson.com

OCEAN COUNTY OFFICE
915 Lacey Road
Forked River, New Jersey 08753

July 15, 2008

Hon. Michael B. Kaplan
Judge of the Bankruptcy Court
U. S. Court House
402 E. State Street
Trenton, New Jersey 08608

> **Re In re Francisco & Anna Rodriguez**
> **Case No: 07-24687(MBK)**
> **Hearing: 6/25/08**

*Via Electronic Filing*

Dear Judge Kaplan:

This supplemental letter memorandum is submitted in further support of the position of the Debtor in this contested motion, and specifically in response to the inquiry by the Court respecting certain issues raised during oral argument.

It remains the Debtor's absolute belief and conviction that the actions by Countrywide in attempting to collect monies post petition that arose and were due pre-petition, and were admittedly the direct and proximate result of a pre-petition default, constitute a clear and unequivocal violation of the automatic stay as set forth under 11 U.S.C. § 362(a). In response to the creditor's assertion that only those monies actually paid for pre-petition advances were utilized in calculation of the proof of claim and thus collected through the Chapter 13 plan, the Court has queried whether there is a legitimate distinction based on those monies "contractually" due for either pre and post petition disbursement. This memorandum shall primarily address this issue.

## I.  Creditor's argument creates an artificial distinction that is not supported by the underlying contractual documents or obligations.

To the extent that Countrywide seeks to justify their post petition increase of the monthly escrow deposits and cushion in order to replenish the escrow balance within the first twelve post-petition months, their separation of the actual pre-petition disbursements from the required pre-petition escrow deposit payments is a wholly artificial distinction created solely to support their actions in this circumstance. Nothing in the contract creates such a basis for independent classification.

Quite to the contrary, the mortgage itself combines both obligations as part of the security interest. In the mortgage document (provided to the Court at hearing and marked C-2), ¶ 2 states as follows:

> **2. Monthly Payment of Taxes, Insurance, and Other Charges.** <u>Borrower shall include in each monthly payment</u>, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied <u>or to be levied against the Property</u>.............................[t]hese items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
> .............................
> <u>The Escrow Funds are pledged as additional security</u> for all sums secured by this Security Instrument..............

> **9. Grounds for Acceleration of Debt**
> **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
> (i) Borrower defaults by <u>failing to pay in full any monthly payment required by this Security Instrument</u> prior to or on the due date of the next monthly payment, or
> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

> **18. Foreclosure Procedure.** If Lender <u>requires immediate payment in full under paragraph 9</u>, Lender may foreclose this Security Instrument by judicial proceeding.....

> {emphasis added}

There can be no serious argument that <u>all</u> of the escrow payments demanded by Countrywide pre-petition (the full escrow deposit of <u>$ 707.20</u> for the eight delinquent pre-petition months or $ 5,657.60) <u>were contractually due pre-petition</u>. The mortgage clearly provides in ¶ 2 for the required payment of monies for future assessments and nothing in the mortgage remotely provides for any separate treatment of those funds than any other monies required to be paid. The mortgage explicitly provides that non-payment for any monies are a basis for default and provides the identical remedies in the event of such default. The basis for the creditor's treatment of the pre-petition monies due for post petition disbursements as somehow less contractually due than any other funds cannot be found in the mortgage itself and one need only envision a debtor unilaterally deducting that portion of the escrow deposit from their monthly payments to realize the absurdity of the argument. Would Countrywide treat such a deficient monthly payment any different than any other default provided by ¶ 9(a) of the mortgage?

11 U.S.C. § 1322(a)(3) and (c)(1) permit the curing of defaults through a Chapter 13 plan without any reference to the nature of the default. Likewise, 11 U.S.C. § 362 refers specifically

to claims (defined in § 101(5)(A) as a "right to payment....." or in § 101 (5)(B) as a "right to an equitable remedy for breach of performance...") which arose prior to the petition.  Again, there can be simply no question that Countrywide's right to escrow deposits in the amount of $ 707.20 per month arose pre-petition, were demanded per the parties' contract pre-petition, and their non-payment was actionable pre-petition.  By any rational definition under bankruptcy law or non-bankruptcy law, the full $ 5,657.60 is a pre-petition debt.

The designation by Countrywide of a portion of those monies as post petition based on the timing of their utilization by Countrywide is an arbitrary and unrealistic determination, which has really nothing to do with either the Bankruptcy Code, RESPA or the mortgage itself. It is the merely the vehicle which Countrywide uses to shift and accelerate the repayment of monies which are due by virtue of a pre-petition default, and justify the payment of even further monies as alleged shortages and escrow cushions.   Rather than permitting the Debtor the opportunity to cure the full default and return to the status quo per 11 U.S.C. § 1322 through the provisions of a Chapter 13 plan, Countrywide now collects a substantial portion of those monies (and more) on its own terms and timetable.

It bears repeating and questioning that if Countrywide billed and demanded from the debtor per their security instrument prior to filing monies for escrow in the amount of $ 5,657.60 (the eight required pre-petition payments of $ 707.20), why should they be allowed to collect post petition $ 7,441.98 as a result of Debtor's Chapter 13 filing?[1]  This is hardly a return to any status quo, but rather a wholesale improvement over the status quo.  It again bears further repeating that this is not due to any post petition event (the actual escrow deposit decreased post petition) or a natural escrow shortage.  Countrywide admits in their submitted papers that but for the pre-petition default and resulting bankruptcy - there would be no shortage!

Countrywide's argument continually ignores the fact that their claim for a  post petition shortage has been self created by their accounting (the post petition elimination of the projected escrow surplus and reassessment of the account from zero).  The Debtor's repayment of the defaulted escrow payments ($ 5,657.60) through the Chapter 13 plan is the designated method under the bankruptcy code to return the escrow balance to equilibrium and the Creditor cannot rely upon the administrative provisions of RESPA to circumvent the Debtor's rights under § 362 and §1322 of the Bankruptcy Code.[2]

---

[1]  The Proof of Claim in the Chapter 13 of $ 3,869.91 plus the "shortage" of $ 2,527.81 plus the "cushion" of $ 1,044.261 equals $ 7,441.98.

[2]  As shown, Countrywide's plan will cause the Debtor to pay substantially more than was owed and in default on the date of filing and as set forth in Debtor's earlier submission, would actually result in an equity cushion much higher than permitted under  24 CFR Ch. XX § 3500.17(c)(ii) which would be approximately $ 1,300.

While Countrywide repeatedly suggests to the Court that it is being asked to "make an interest-free loan to the Debtors" for the post petition escrow disbursements, this comment is inappropriate, disingenuous, and is identical to the assertion made by Countrywide in the *Campbell* matter in Texas.[3] Countrywide is being treated no different than any other secured creditor in a Chapter 13 bankruptcy which has its pre-petition default cured over the terms of a Chapter 13 plan. The assertion of an "interest free loan" is no more relevant to this Creditor than the secured auto finance company which has its arrears repaid under a plan, or the landlord who has his rent arrears repaid while he faithfully paid the underlying mortgage all along.

The Chapter 13 plan under § 1322 is returning both the Creditor and the Debtor to the status quo as if there had been no default on the date of filing. Debtor is immediately commencing payment of the post-petition obligations including escrow payments.[4] Thus, over the course of any given year, the debtor will pay post petition dollar for dollar all of the post petition disbursements. Yes, there are fluctuations, but Debtor is also repaying the escrow balance deficiency through the plan which continually returns the Creditor to exactly where it was the day before filing.[5] Countrywide has no legal basis under the Bankruptcy Code to demand more. The attempt to do so violates Debtor's basic rights under Chapter 13 and is a violation of the automatic stay entitling the Debtor to relief and damages under § 362(k).

We thank the Court for its kind consideration of this most important issue.

Respectfully yours,

*/s/ Steven J. Abelson*
STEVEN J. ABELSON

SJA/aoc
cc: Locke, Lord, Bissell & Liddell,LLP
    Phelan, Hallinan & Schmieg, PC
    Mr. and Mrs. Francisco Rodriguez

---

[3] See Brief of Appellant Countrywide Home Loans Inc., *In re Campbell* (5th Cir.) No. 07-20499

[4] Countrywide's failure to account for the November 2007 post petition payment (by attaching same to the pre-petition escrow surplus which was then eliminated) has merely exacerbated the underlying defect in the creditor's treatment of this issue. The issue cannot be resolved consistent with the Bankruptcy Code by accounting for this payment and merely reducing the amount of the alleged post petition shortage.

[5] This is why the artificial classification used by Countrywide in separating pre-petition disbursements in the Proof of Claim and demanding the remainder as a post petition shortage is so relevant and contrary to the basic tenets of Chapter 13. Contrary to the accounting utilized, this is not a new loan so the arbitrary zero starting point for an escrow analysis on any date is going to create wild aberrations. The required tax payment within days of commencement in this case (and thus five (5) tax payments within a thirteen (13) month analysis) merely accentuates the problem.